UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAN LIGHTFOOTLANE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 07-56-B-W |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| HEALTH AND HUMAN | ) | |
| SERVICES AND ALL MAINE | ) | |
| TOWNS | ) | |
| | ) | |
| Defendants | ) | |

*Recommended Decision on Motion to Dismiss and Petition for Writ of Error*

Jan Lightfootlane, proceeding as a pro se plaintiff, operates a statewide homeless

crisis hotline.  This is her second civil action in this court seeking declaratory relief

apropos the administration of the State of Maine's general assistance program. In her

2006 complaint against the Maine Department of Health and Human Services

Lightfootlane contended that the Department's employees, allegedly, provided her clients

with false information and misapplied the law in administering the State of Maine's

general assistance program.  With respect to that suit, I recommended that the court grant

the defendant's motion to dismiss because I concluded that Lightfootlane lacked standing

to bring her claims.  In that action the suit progressed as if the Department was sole

defendant.  In this action Lightfootlane also targets "all Maine towns." [1]  This 2007

complaint is essentially the same action as her 2006 complaint; indeed Lightfootlane

states as much in her response to the motion to dismiss, asking the court to renounce the

---

[1]    Lightfootlane points out that in her 2006 complaint she did list the towns as defendants but the
Court did not recognize this designation when it docketed her complaint.  This appears to be true.

2006 decision.[2]  After close attention to Lightfootlane's new pleadings, I recommend that

the Court grant the Maine Department of Health and Human Service's motion to dismiss

(Docket No. 10) and deny Lightfootlane's request for a writ of error (Docket No. 12).

*Discussion*

*Standard Governing Motions to Dismiss*

The Department presses its motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  I must accept all factual allegations in Lightfootlane's complaint as

true and take them in the light most favorable to her. Erickson v. Pardus, __U.S. __, __,

127 S.Ct. 2197, 2200 (June 4, 2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).

To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, Lightfootlane's

complaint must contain a short and plain statement showing an entitlement to relief, and

the statement must "give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests." Swierkiewicz v. Sorema N.A ., 534 U.S. 506, 512 (2002)

(citing Fed. R. Civ. P. 8). See also Bell Atl. Corp. v. Twombly, __U.S. __, __, 127 S.Ct.

1955, 1964 (May 21, 2007) (citations omitted); Erickson, 127 S. Ct at 2200; Dura

Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  "Factual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true." Bell Atl. Corp., 127 S.Ct. at 1965.  Lightfootlane must

plead enough facts to state a "plausible" basis for the claim. Id.  Dismissal is warranted

under Federal Rule of Civil Procedure 12(b)(6) if, assuming the truth of the factual

---

[2]     On the title page of this pleading Lightfootlane describes it as a "Motion for 'Writ of Error', By the Court." (Docket No. 12 at 1.)   Under this type-written description she has described in handwriting that it is "Plaintiff response to motion to dismiss." (Id. at 1.)  This hybrid pleading was doubled docketed and the parties have filed responsive pleadings as if the single document were two pleadings.

allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

***Motion to Dismiss***

In its motion to dismiss, the Maine Department of Health and Human Services relies on the assertion that there are dispositive legal issues precluding the relief sought by Lightfootlane, arguing that Lightfootlane's claims are barred by the doctrines of issue preclusion and/or claim preclusion; that she cannot assert tax-payer standing to bring her claims; that the Department is cloaked by the State of Maine's sovereign immunity; and that the Department is not a person within the meaning of 42 U.S.C. § 1983.

***The 2006 Action***

My summary of Lightfootlane's prior action, the outline of Maine's general assistance statute, and my reasoning apropos her want of standing can be found at Lightfootlane v. Maine Department of Health and Human Services, Civ. No. 06-53-B-W[3], 2006 WL 2925243 (D. Me. Oct. 11, 2006) aff'd 2006 WL 3501331 (D. Me. Dec. 1, 2006).  With respect to her standing to bring that suit, Lightfootlane asserted that each time a representative of the defendant provided her clients with false information her 'calling' to help prevent or overcome homelessness was injured, making her work three to seven times harder because of the unfair application of the laws.  When one of her hotline callers received misinformation about entitlement to general assistance, Lightfootlane complained that she had to search for alternative housing and payment for her assistance-eligible client.  She alleged that she has been "monetarily affected by towns not helping those in need who qualifies" and has spent her own money to house those who have been

---

[3] (Docket Nos. 14 &19.)

illegally denied assistance.  (2006 Compl. at 6.) As with the present action, Lightfootlane

sought declarative relief.

I concluded that Lightfootlane's,

> allegations of rights violations simply do not fall within the zone of
> interests protected by the First, Fifth, and Fourteenth Amendments.
> Lightfootlane's allegations do not support a claim that her speech and
> association rights have been infringed by the State nor do the facts that she
> sets forth support a claim that she has been denied any process due to her.
> She does not gain standing simply by asserting her claims under specific
> constitutional amendments.

Lightfootlane, 2006 WL 2924243 at 5.

***The 2007 Complaint***

Lightfootlane introduces her most recent complaint with the declaration: "This

case is brought upon the principal that all citizens of the USA are due a remedy."  (2007

Compl. at 1.)  She asserts that her action is the kind of controversy decided by Marbury v.

Madison, 1 Cranch 137, 2 L. Ed. 60 (1803).  She states that her case raises the following

questions that are parallel to the questions raised in Marbury: One, does Lightfootlane

have the right to expect in her homeless advocate role to be unimpeded by the

government's bad application of the law, and, two, if she has that right and that right has

been violated, do the laws of her country afford her a remedy?  (2007 Compl. at 2.)

Lightfootlane urges that it is her mission as an advocate for the homeless to ensure that

all who qualify for town aid receive it.  (Id. at 3.)  She believes that every citizen who

seeks remedy for a governmental misapplication of the law has standing to bring suit.

(Id.)

In a section of her complaint dedicated to this issue of standing, Lightfootlane

opines:

I operate a statewide Homeless Crisis Hotline.  From my phone I provide relevant information on preventing homelessness.  This time I assert I also have a religious 1st amendment right to inform people of resources, intended to assist their secular needs without undue governmental interference.

From Caribou to Elliot Maine, towns and cities transposes from the laws from the intent of Maine legislatures into a ghost of what was intended. []  Each time a duly appointed representative of the government provides false information, my calling of helping to prevent or overcome homeless is injured.

I strongly assert **My 1st amendment rights of Freedom of speech, and my religious rights are injured as a result of the impressible action of the official.**  My 6th amendment rights to Meaningful Access to a Forum of truth, has been violated when my prior compliant was denied.

To prove I operate a hotline I am enclosing a copy of our listing in the phonebook.  I am the primary staff person for the hotline.  This Hotline has operated since Jan 1989.  To prove I must work harder due to bad application of law, I send a copy of one of the flyers we put out, and emailed or mail by postal service, to clients who has been wrongfully denied.

This is but one small example of how I am forced to increase the amount of my labor, still without achieving the same results which should happen at the initial GA application by law.  The State and all towns has No justifiable right to force any person to do more work, to achieve permitted ends, simply because the government wants to violate the rights of those I serve.  This is a matter of Public interest.  And If America is free - I as [] Both a Concerned and a Directly Injured, Citizen have the STANDING to an effective remedy.  Plus this court HAS the JURISIDCITION to fully adjudicate this action, based upon the facts.

*If this court refuses to see and provide remedy for this simple but ongoing injustice –I and most underpaid American Women should move to Iraq where there is no pretence of freedom.*

….

I am personally involved because, my work of informing people how to avoid homelessness gets 3 to 10 times more complex and difficult, when our clients 5th and 14th amendments rights are trashed.  Often with bad application of the law, my case load is impossible to complete, then if the GA laws were properly administered.  Example: In stead of an eligible person who calls our hotline being assisted, I must inform the homeless caller, in general of the appeal process.

I must search for alternative housing or funding for that person, or family.  These are individuals who are being lied to on the application of laws affecting them.  Our callers are people who are eligible for assistance, by any reasonable and fair application of the statutes.  This

changing of enacted law, is contrary to the idea of equal treatment under
the law.

(Id. at 4-6.)  Lightfootlane represents that her work in this area is on a volunteer basis (id.

at 10), and that she has voluntarily spent money from her own pocket to house those who

have been denied assistance (id. at 11; see also Docket No. 21 at 3).  It is her belief that

any taxpayer has a right to bring an action against any municipality or the overseers for

the bad implementation of the general assistance laws.  (2007 Compl. at 12 -13.)

    With respect to her substantive complaints about the misapplication of the general

assistance laws, Lightfootlane alleges that there is a discrepancy between towns as to

what portion of their annual budget it is willing to allocate to general assistance (id. at

14), towns are refusing assistance to a woman who was sharing an overcrowded living

space with her sister (id. at 15), towns are denying assistance to mentally ill applicants

because of trouble verifying income (id.), towns are requiring reimbursement from

parents of children receiving assistance (id.), towns are misinforming applicants by

telling them that they are applying in the wrong town (id. at 16 & 18),[4] and towns are

rebuffing young applicants who refuse to contact an abusive parent or whose parent is

unwilling to disclose the information as a prerequisite to obtaining aid (id. at 17).

Lightfootlane has attached her own affidavit in support of her factual assertions.  (Docket

No. 12-2.)

    In her response to the motion to dismiss/motion for a writ of error Lightfootlane

mainly critiques the reasoning behind this court's conclusion regarding the 2006

---

[4]    The complaint's numbers are not the same as the number assigned by the court's electronic system.
I use the latter.  It appears that Lightfootlane filed her complaint with two page 18s, one in the order where
page 16 would be found.

complaint that she lacked standing.  (Resp. Mot. Dismiss at 2- 7.)[5]  She recognizes that

this 2007 action "states pretty nearly the same principals" as her 2006 case (id. at 6) but

urges that this court's conclusion that she lacked standing to file suit because the

government was violating the general assistance law "is contrary to the idea of a free

America" and "clearly places the purpose of our US Constitution upon its head" (id. at 6).

She wants the court to declare the 2006 decision invalid and remove it from the case law.

(Id. at 7.)   Lightfootlane believes that this case would not be dismissed if it were brought

by a costly lawyer rather than a pro se plaintiff. (Id. at 2 -3.)

  Lightfootlane has also submitted a memorandum aimed at defeating the

Department's argument that her current action is redundant of her 2006 action and barred

by principles of res judicata.  (Docket No. 12-3.)   She states that although the issues in

the 2007 case might be similar to those in the 2006 litigation, her injuries are new in that

she has handled 365 new calls by clients impacted by the alleged misapplication of the

general assistance laws.  (Id. at 1, 6.)  She also asserts that she has new theories

underlying her claim of entitlement to relief, arguing that not only are her rights as a

homeless advocate impaired by the wrongful application of the general assistance laws to

her clients, but that she is also asserting a conspiracy theory apropos the State and the

municipalities.  (Id. at 2.)   "Who in their right minds wants more work," Lightfootlane

queries in expressing the "core" of her complaint, only to feel unproductive in

accomplishing a legitimate goal of housing the homeless?  (Id. at 8.)  She contends that

the First Amendment right of association includes the right of engaging in a lawful

business or occupation without unreasonable or arbitrary interference by the government.

---

[5]  Lightfootlane has also filed a reply to the Defendant's response to her request for a writ of error that essentially reiterates the arguments made in her other pleadings.  (Docket No. 21.)

(Id. at 12.)  Citing United Transportation Union v. State Michigan Bar, 401 U.S. 576

(1971), Lightfootlane asks that she be accorded the same right to assist as recognized in

that case.  (Id. at 16; see also Docket No. 21 at 1-2.)  Lightfootlane urges that there is no

public interest served by allowing the general assistance laws to be arbitrarily

administered and, therefore, there is no public interest in preventing her from maintaining

this suit.  (Docket No. 12-3 at 5.)   She believes that the principles of res judicata would

only be applied by a fascist court, with a greater interest in managing a docket than in

doing justice.  (Id. at 9.)

In a pleading docketed as a sur-reply to the Department's reply, Lightfootlane

seeks to "set right" some of the Department's misconceptions.  (Docket No. 16.)  She

opines:

> In fighting for my own rights, I fight for the rights of others.  Just because my taking legal action for the enforcement of my own god given, Constitutionally re-enforced rights will result in the enjoyment of the rights of many, makes my rights no less valid.
> I am an ordinary person who believes every person has a right to enjoy the use of their human and constitutional rights.  If such rights are withheld by government the Courts are charged to enforce those God Given protections.  I also say If this court grants 'a writ of error' on its first findings the question of preclusion, becomes moot.

(Id. at 1-2.) With respect to her theory that her religious rights are infringed by the

misapplication of the general assistance laws, Lightfootlane explains for the first time: "It

is a religious doctrine of most religions 'to do good works'.  Not merely to 'attempt' to do

good works."  (Id. at 2.)  She now maintains that her injury is new in that this court

injured her right to freedom of religion when it "closed the doors to redress."  (Id. at 2.)

She reiterates that she is now pressing a conspiracy claim, a theory that includes the

court's action in dismissing her earlier suit.  (Id. at 3.)

8

I recognize that Lightfootlane believes that the 2006 decision was "but a gut feeling" (Docket No. 16 at 4), however this court did apply United States Supreme Court law, most especially <u>Allen v. Wright</u>, 468 U.S. 737 (1984), in reaching its conclusion that Lightfootlane did not have standing to pursue her action in this court. <u>See</u> <u>Lightfootlane</u>, 2006 WL 2925243 at *4 -5.   The same principles apply here. <u>See</u> <u>generally</u> Erwin Chemerinsky, Federal Jurisdiction § 2.3 (5th ed. 2007).   Accepting for the purposes of resolving this motion to dismiss that Lightfootlane has alleged sufficient new injury to avoid dismissal on a claim/issue preclusion basis, her efforts to establish standing for this new action are to no avail.    The Department is correct that her status as a tax payer is a non-starter.   <u>See</u> <u>Hein v. Freedom From Religion Foundation, Inc.</u>, __ U.S. __, 127 S.Ct. 2553 (June 25, 2007); <u>Collins v. State</u>, 2000 ME 85, 750 A.2d 1257; Chemerinsky, supra, § 2.3.5.   The fact that Lightfootlane is stressing a conspiracy theory between the Department and the municipalities (and the Court) adds another layer to her theory of liability but it does not add anything to strengthen her case for standing.   With respect to her assertion of an injury to her free exercise of religion, her vague notion that all religions counsel to do good work does not state a "plausible" free exercise of religion claim.   <u>See</u> <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1965.[6]   <u>United Transportation Union</u>, a case brought by a union concluding that a state injunction on unions providing legal assistance was unconstitutional, simply is inapposite; there is no state restraint on Lightfootlane's right to counsel her clients.[7]   Finally, I stress that Lightfootlane's status as a <u>pro</u> <u>se</u>

---

[6]   I also note that Lightfootlane once again complains that the misapplication has stymied her efforts to realize her calling and greatly increased her workload, but there is no provision of the constitution that promises that the federal or a state government must assure such achievement and the lightest possible workload to each citizen.

[7]   Indeed it is the nature of the beast that those in counseling positions – be it a lawyer, a union representative, or a staff member of a social service organization – are confronted by clients that allege that they are being misinformed or mistreated by a state entity or employee.

9

litigant and the asserted desire of this court to streamline its docket play no part in the determination that she lacks standing.  The court is bound to apply the law and the same law would apply and the same result be realized if Lightfootlane was represented by counsel or if a lawyer attempted to bring this suit as a plaintiff seeking redress for the general misapplication of the general assistance program.[8]

### *Conclusion*

For the reasons set forth above, I recommend that the Court grant the motion to dismiss (Docket No. 10) and deny the petition for a writ of error (Docket No. 12).

---

[8]    After this motion to dismiss was under consideration, Lightfootlane filed an amended complaint unaccompanied by a motion to amend.  This filing seems to be a response to my September 5, 2007, order which reserved ruling on the court's order to show cause as to service on "All Maine Towns," the other defendant named in Lightfootlane's complaint, and reserving ruling on Lightfootlane's motion to extend time to effect service on the towns.  (Docket Nos. 18, 19, 20.)  I ordered:

> If plaintiff believes she wants to name the Maine Municipal Association as a defendant and dismiss the action as to "all Maine towns" she should file a motion to amend her complaint to accomplish that objective. Any such motion should be filed with this court by September 15, 2007, and plaintiff will then have 21 days after her amended complaint is allowed to make service upon the new defendant. If plaintiff fails to take these steps by September 15, 2007, I will recommend that "all Maine Towns" be dismissed for failure to make service.

(Docket No. 20.)

The amended complaint is different in substance from Lightfootlane's original complaint in that it attempts to allege a cause of action against the Maine Municipal Association. In fact, the amended complaint might be construed as only seeking relief from the Maine Municipal Association as there is only passing reference to the Department.   I cannot identify anything in the amended complaint that would change my recommendation as to the Maine Department of Health and Human Services.

Furthermore, Lightfootlane has not filed an actual motion to amend her complaint and has, therefore, provided the court with no basis for even contemplating allowing the amendment as to the Department after the Department has already filed a motion to dismiss.  If the Court were inclined to treat the amended complaint as a motion to amend I would recommend denying the motion as to the Department because there is nothing in the amended complaint that adds to the viability of her action against the Department.  If the court adopts this recommended decision and dismisses the complaint and amended complaint as to the Department, presumably the only claim remaining would be the amended complaint allegations pertaining to the Maine Municipal Association.  I have not parsed those allegations in this recommended decision, as service has not yet been accomplished upon the Maine Municipal Association.  If the court adopts this recommended decision, the clerk will then presumably issue a summons for the Maine Municipal Association.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 25, 2007.

11